**BURG | SIMPSON | ELDREDGE | HERSH | JARDINE PC**
Penny J. Manship, Esq., SBN 198077
8310 S Valley Hwy, Suite 270
Englewood, CO  80112
Telephone:  303-792-5595
Facsimile:  303-708-0527
Email:  pmanship@burgsimpson.com

**HARTMANN & KANANEN**
Ronald A. Hartmann, Esq., SBN 115683
5743 Corsa Avenue, Suite 119
Westlake Village, CA  91362
Telephone:  818-710-0151
Facsimile:  818-710-0191
Email:  constructiondefects@gmail.com

Attorneys for Plaintiffs and Class Representatives
on behalf of themselves and all others similarly
situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOYT HAYNES and FELICIA M. HAYNES; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UPONOR, INC.; UPONOR NORTH AMERICA, INC.; DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Hoyt Haynes and Felicia M. Haynes (collectively hereinafter "Plaintiffs"), on behalf of themselves and all persons similarly situated ("the Class"), by and through their attorneys Burg Simpson Eldredge Hersh Jardine, P.C. and Hartmann & Kananen, allege as follows:

## INTRODUCTION

1.     This is a class action for damages and other relief asserted pursuant to Federal Rule of Civil Procedure 23 on behalf of all persons similarly situated related to blue and red colored cross-linked polyethylene tubing ("PEX") manufactured and/or distributed by Defendants Uponor, Inc. and Uponor North America, Inc. (collectively "UPONOR" or "Defendants") which suffers from design and/or manufacturing defects that cause premature damage, corrosion, degradation, deterioration and failure (hereinafter "UPONOR PEX").

## THE PARTIES

2.     Plaintiffs Hoyt Haynes and Felicia M. Haynes are the owners of, and are individuals residing at all relevant times at, 161 Fisher Court, Brentwood, California 94513 ("Plaintiffs' Home"). Plaintiffs are citizens of California.

3.     Defendant Uponor, Inc. is an Illinois corporation with its principal place of business located at 5925 148th Street West, Apple Valley, Minnesota 55124.  Defendant Uponor North America, Inc. is a Delaware corporation with its principal place of business located at 5925 148th Street West, Apple Valley, Minnesota 55124.  At all relevant times herein, UPONOR designed, manufactured, marketed/advertised, sold and/or distributed UPONOR PEX for use in residential and commercial water plumbing systems throughout the United States, both directly and indirectly, by and through their entities, employees, agents, predecessors-in-interest and/or other representatives.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action in which the matter in controversy exceeds $5 million, exclusive of interest and costs, and some members of the Class are citizens of states different than Defendants.

5.     This Court has personal jurisdiction over Defendants because, among other things, Defendants conduct substantial business in California, have sufficient minimum contacts in California, and intentionally avail themselves of the consumers and markets within California through the promotion, advertising/marketing, partnership agreements, supply agreements, sales and distribution of its products, including UPONOR PEX.

6.     Venue is proper in this Court because at all relevant times Plaintiffs resided in Contra Costa County, California, and pursuant to 28 U.S.C. § 1391(a)(2) a substantial part of the acts giving rise to Plaintiffs' claims occurred within Contra Costa County.

## FACTUAL ALLEGATIONS

7.     Plaintiffs purchased Plaintiffs' Home from Seecon Built Homes, Inc.  Plaintiffs' Home was substantially completed in December of 2016 and was originally constructed with UPONOR PEX in the potable water plumbing system.

8.     In October 2019, Plaintiffs discovered a water leak from the UPONOR PEX in their master bathroom ceiling/wall area, which caused significant damage to the walls and fixtures in the master bathroom.  The UPONOR PEX in Plaintiffs' Home is prematurely degrading, corroding, deteriorating and/or failing and suffers from micro-cracking.

9.     PEX stands for cross-linked polyethylene.  PEX is a popular product because of its purported flexibility and ease of installation.  PEX tubing is commonly either blue or red to make it readily identifiable once installed as either a cold (blue) or hot (red) water line.

10.     Unlike UPONOR, most PEX manufacturers add red or blue color pigment, along

with antioxidant stabilizers, to the plastic formulation during the extrusion process (when the tubing is formed) and prior to cross-linking, which adds color evenly throughout the tubing wall.

11.     Antioxidant stabilizers are necessary to achieve the flexibility of PEX tubing, maintain ductility and protect against embrittlement.

12.     Unlike other PEX manufacturers, Defendants manufacture PEX tubing and then, after extrusion, add a blue or red coating to the tubing's outside surface.  Coatings do not stick to PEX, so Defendants patented a process to color coat their PEX tubing.  Defendants' patented process involves conveying the PEX tubing "through an oxidizing step in which at least the outer surface of the base pipe is oxidized, through a coating step in which a pre-polymer system is applied to the outer surface of the base pipe and through a curing step in which the pre-polymer is cured to form a layer of the pipe."  Uponor Innovation AB, Fristad (SE), Appl. No. 12/572,683, Filed Oct. 2, 2009.

The below photograph depicts the difference between UPONOR PEX, displaying the coating only on the tube's exterior surface, and other manufacturers' PEX, displaying the coating through the entire tube.



13.     This means that in order to get the coating to stick to the outside surface of the UPONOR PEX tubing, Defendants run the PEX tubing through a furnace/flame treatment that

oxidizes/burns the outside of the pipe.  While the furnace/flame treatment improves adhesion qualities of polymers prior to the application of coatings and adhesives, it is an oxidation process that destroys the antioxidants from the outside of the UPONOR PEX tubing, subjecting the tube to actual damage and premature failure in the form of, among other things, oxidative degradation, corrosion, micro-cracking, cracking, through-wall cracking, leaks and other property damage.

14. Because the outside surface of UPONOR PEX is depleted of antioxidants after the flame treatment, the outside surface prematurely becomes brittle and develops microcracks when the tubing is expanded during installation.  The embrittlement and microcracks constitute damage to the tubing and the cracks continue to grow and spread over time, eventually propagating through-wall, causing resultant leaks, significant damage to other property, loss of use of the plumbing system, and/or preventing the plumbing system from functioning as intended.

15. As of 2016, Defendants represented that they produced over five billion feet of UPONOR PEX and were responsible for approximately one-third of all PEX sold in the United States.

16. As of 2016, Defendants did business with all of the top ten homebuilders in the United States and have exclusivity agreements with three of them.

17. As of 2016, among the top ten homebuilders, Defendants claimed to have a 60% share of their housing starts.

18. Defendants designed, manufactured, advertised/marketed, distributed, and/or sold UPONOR PEX for use in water plumbing systems throughout the United States, including but not limited to Plaintiffs' Homes, homes and other structures owned by members of the Class, and all other similarly situated homes and structures.

19. Defendants designed, manufactured, advertised/marketed, distributed, and/or sold

UPONOR PEX for use in potable water plumbing systems throughout the United States.

20.    Defendants have repeatedly represented that consumers should trust Defendants to provide the highest quality PEX tubing because the company has many years of industry experience and is an industry leader in the manufacture of PEX tubing.

21.    Until approximately 2021, Defendants designed, manufactured, advertised/marketed, distributed, and/or sold the UPONOR PEX at issue. Defendants' sales catalog advertised that, *inter alia*, its UPONOR PEX was the highest quality PEX tubing available, and that its cross chemical bonding process gave it "superior characteristics."

22.    At the following link, https://www.uponor-usa.com/en/customer-support/faq#:~:text=Uponor%20PEX%20will%20not%20corrode,fit%20that%20type%20of%20connection, Defendants represented that UPONOR PEX has "superior resistance to stress-crack corrosion" and will suffer "no micro-cracking during expansion."

23.    Contrary to these affirmative statements, as alleged herein, the UPONOR PEX suffers from design and/or manufacturing defects causing damage, including but not limited to micro-cracking.

24.    Specifically, and as a result of such defects, the UPONOR PEX is predisposed to premature oxidative failure, micro-cracking, through wall cracking, leaks, loss of use, and other failure and damages. These defects cause the UPONOR PEX to corrode, crack, fail to perform when put to their intended use, leak and reduce their normal useful life.

25.    Defendants failed to fully or adequately compensate property owners, including, but not limited to, Plaintiffs and members of the Class, who have been injured as a result of the defective UPONOR PEX. Defendants failed to disclose this material information to Plaintiffs, members of the Class, and the public.

26.     Before designing, manufacturing, advertising/marketing, distributing and/or selling UPONOR PEX, Defendants failed to take appropriate steps to ensure that its products were safe for their intended use.

27.     Defendants knew or should have known that UPONOR PEX was not suitable for use within water plumbing systems and that UPONOR PEX suffered from the defects and caused damages as alleged herein.

28.     UPONOR PEX has caused damage to, and failure of, plumbing systems, which has caused and will continue to cause Plaintiffs and the Class to incur damages through no fault of their own.

29.     Beginning in or around 2021, Defendants discontinued their manufacture, distribution and sale of red and blue UPONOR PEX because of the defects with the product. However, Defendants misrepresented that the product was being "suspended," not "discontinued," and instead concealed that it discontinued the product due to the defects and premature failures and damages.

30.     Plaintiffs seek relief for damages sustained by Plaintiffs and the Class that Defendants proximately caused by the use of their UPONOR PEX in Plaintiffs' and Class members' homes and other structures.

31.     Plaintiffs seek relief to remedy Defendants' strict products liability violations, breaches of implied warranty, violations of the Standards for Residential Construction (C.C.P. § 895, et seq.), violations of the Unfair Business Practices Act (Bus. & Prof. Code § 17200, et seq.), and negligence. Plaintiffs and the Class also seek declaratory and injunctive relief, as described below.

32.     Plaintiffs have suffered an ascertainable loss as a result of Defendants' acts,

omissions and/or misrepresentations associated with UPONOR PEX, including their misrepresentations and non-disclosures about the product defects and discontinuing/suspending the manufacture, distribution, and sale of the UPONOR PEX.

33.     At no time did Defendants or any of their agents, dealers or other representatives inform Plaintiffs of Defendants' acts, omissions and/or misrepresentations related to defects in UPONOR PEX.

## STATUTE OF LIMITATIONS TOLLING

34.     Defendants knowingly and actively concealed and failed to disclose relevant information to Plaintiffs and members of the Class related to the defective nature of UPONOR PEX.

35.     Defendants engaged in a scheme to cover up evidence of premature deterioration and failure of UPONOR PEX by making spot repairs when leaks were reported and not informing the members of the Class about the inherent problems and defects with the UPONOR PEX pipe.

36.     Because the defects in UPONOR PEX are latent, Plaintiffs and members of the Class could not have reasonably discovered the true nature of the defects until shortly before the filing of this Complaint.

37.     Any applicable statute of limitations was tolled by Defendants' knowing and active concealment and denial of the facts alleged herein.

## CLASS ACTION ALLEGATIONS

35.     This action is brought on behalf of Plaintiffs, individually and as a class action, pursuant to FED. R. CIV. P. 23(a), 23(b)(2) and/or 23(b)(3), on behalf of a state class of owners of homes and other structures in California with UPONOR PEX  ("Class"). Specifically, the Class consists of:

All persons or entities who own homes or other structures in California with UPONOR PEX used as the lines and components of a potable water plumbing system.

36.    Plaintiffs may, and specifically reserve the right to, re-define the Class prior to class certification.

37.    This action has been brought and may be properly maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is numerous and ascertainable, and the common questions of law and fact predominate over any questions affecting solely individual members of the Class.

38.    The members of the Class are so numerous that joinder of all members is impracticable.  Although the exact number of class members is currently unknown, Plaintiffs are informed and believe and thereon alleged that the proposed Class contains thousands of individuals and entities who own homes or other structures in California with UPONOR PEX.  The disposition of the class members' rights with respect to the alleged defects, as described in this Complaint, is a benefit to all parties and to the Court.

39.    A well-defined community of interest exists in that common questions of law and fact exist as to the members of the Class, including but not limited to:

     i.      Is UPONOR PEX defective?

     ii.     Was UPONOR PEX defectively designed and/or defectively manufactured for its intended purpose?

     iii.     Did Defendants know or should they have known that UPONOR PEX is inherently defective and substantially certain to malfunction during its useful life?

     iv.     Is UPONOR PEX prematurely failing, degrading, corroding and/or

deteriorating?

v.      Did Defendants fail to warn consumers that UPONOR PEX is subject to premature failure, degradation, corrosion and/or deterioration?

vi.      Did Defendants make fraudulent, false, deceptive, and/or misleading statements in connection with the advertising/marketing and/or sale of UPONOR PEX?

vii.      Did Defendants omit material information when they advertised/marketed and/or sold UPONOR PEX?

viii.      Did Defendants owe a duty to Plaintiffs and the putative Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, advertising/marketing, distribution and/or sale of UPONOR PEX?

ix.      Did Defendants exercise reasonable care in the testing, design, manufacture, advertising/marketing, distribution and/or sale of UPONOR PEX?

x.      Did Defendants breach their duty to Plaintiffs and the putative Class by designing, manufacturing, advertising/marketing, distributing and/or selling UPONOR PEX to Plaintiffs and the putative Class?

xi.      Did Defendants violate Unfair Business Practices Act, California Business & Professions Code § 17200, et seq.?

xii.      Did Defendants violate the standards for residential construction under California Civil Code § 895, et seq.?

     xiii.       Did Defendants violate other California laws?

     xiv.       Did Defendants' conduct constitute willful misconduct and/or fraudulent concealment?

These and other common questions of law and fact predominate over any questions affecting solely individual members of the Class.

40.     Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs own a home with UPONOR PEX in California. Plaintiffs seek to assert the claims as alleged in this Complaint that are typical of the claims that would be asserted by the members of the Class. Plaintiffs will fairly and adequately represent the interests of all members of the Class.

41.     Plaintiffs are adequate representatives of the Class as they have no interests which are adverse to the interests of the Class that they seek to represent. Plaintiffs have retained attorneys that have substantial experience and success in the prosecution of complex defective product consumer protection class action litigation.

42.     A class action is superior to other available means of fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. The disposition of their claims in this case and as part of a single class action lawsuit, rather than thousands of individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Furthermore, given the potential for extraordinary expenses and burdens in conducting the discovery and presentation of evidence regarding the inherent defects in UPONOR PEX, the burden of individual litigation would make it extremely difficult, if not impossible, for individual

members of the class to redress the wrongs asserted herein, while an important public interest will be served by addressing the matter as a class action.  Moreover, separate prosecution by thousands of individual members of the Class would likely establish inconsistent standards of conduct for the Defendants and result in the impairment of and potential harm to the Class members rights and the disposition of their interests through actions to which they were not parties.

43.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

44.    Plaintiffs have adequately and objectively defined the class so the Court will be able to use the class definition to determine the class members.  Defendants' records, as well as public records searches, will reveal the identities of class members.   A brief inspection will show which homes and other structures have lines and components of the potable water plumbing system with UPONOR PEX.  Therefore, the putative class is ascertainable.

45.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final relief with respect to the Class as a whole.

## COUNT I
## STRICT PRODUCT LIABILITY
**(Plaintiffs on behalf of themselves and all others similarly situated Against All Defendants)**

46.    Plaintiffs repeat and re-allege all prior and subsequent paragraphs and incorporate them as if repeated in full herein.

47.    At all times material to this action, Defendants were in the business of or engaged in the mass developing, designing, engineering, testing, approving, manufacturing, fabricating, equipping, inspecting, repairing, labeling, advertising, promoting, marketing, distributing, selling and supplying UPONOR PEX for sale and use by members of the general public throughout the United States, including, but not limited to, California.

48.     At the time the UPONOR PEX left the control of Defendants, it was defective in design and manufacture and unreasonably dangerous to Plaintiffs and the members of the Class who might reasonably be expected to have it in the plumbing systems in their homes and other structures. These defects include, but are not limited to, the conditions described in in this Complaint.

49.     The UPONOR PEX was expected by Defendants to reach, and did reach, homeowners/end users without substantial change in the condition in which it was placed on the market and expected to be installed in homes and other structures.

50.     Plaintiffs and the members of the Class are persons and entities who would reasonably be expected to be owners to have UPONOR PEX as a water plumbing system installed in their homes and other structures.

51.     The defects in the UPONOR PEX caused by Defendants were a direct and proximate cause of damages suffered by Plaintiffs and the members of the Class.

52.     The defects alleged in this Complaint have caused and / or will cause resultant and consequential damage to the homes and other structures owned by Plaintiffs and the members of the Class, including their component parts and other systems, personal property, and other property, including but not limited to:

     a.   Damage to cabinets;

     b.   Damage to floors, sub-floors, and floor coverings;

     c.   Damage to drywall, paint, and wall coverings and finishes;

     d.   Damage to framing, wall cavities, and floor / ceiling cavities;

     e.   Damage to insulation; and

     f.   Damage to component parts of the homes and other structures owned by Plaintiffs

and the members of the Class, personal property, and other property.

53.     Plaintiffs and the members of the Class have suffered or will suffer the following damages in addition to all other damage alleged in this Complaint as follows:

A.     The costs of investigation, including but not limited to retaining consultants and experts and contractors to investigate the defects, to determine the cause and extent of the deficiencies, and to determine the method and cost to repair the deficiencies and the resultant damage, according to proof at trial;

B.     The costs of correction of the deficiencies, repair, redesign and reconstruction of the conditions, deficiencies, and defects, including but not limited to those set forth herein, and for which the Plaintiffs and members of the Class have suffered and / or will suffer damages according to proof at trial;

C.     Damages to homes and other structures, including their components and systems, as well as personal property, which are the legal / proximate consequence and / or result of the conditions, deficiencies, and defects, including but not limited to those set forth herein, and for which the Plaintiffs and members of the Class have suffered and will suffer damages according to proof at trial;

D.     Diminution in value which is the legal / proximate result of the conditions, deficiencies, and defects, including but not limited to those specified herein, and for which the Plaintiffs and members of the Class have suffered and / or will suffer damages according to proof at trial;

E.     Lost or diminished rental income which is the legal / proximate consequence of the conditions, deficiencies, defects, including but not limited to those specified herein, for which the Plaintiffs and members of the Class have

suffered and / or will suffer damages according to proof at trial;

      F.    Loss of use of homes or other structures, which is the legal / proximate consequence of the conditions, deficiencies, defects, including but not limited to those specified herein, for which the Plaintiffs and members of the Class have suffered and/or will suffer damages according to proof at trial;

      G.    Loss of use and relocation costs and related costs when repairs are effectuated, which is the legal / proximate consequence of the conditions, deficiencies, defects, including but not limited to those specified herein, for which the Plaintiffs and members of the Class have suffered and/or will suffer damages according to proof at trial;

      H.    Stigma which is the legal / proximate consequence of the conditions, deficiencies, and defects, including but not limited to those specified herein, and for which the Plaintiffs and members of the Class have suffered and / or will suffer damages according to proof at trial;

      I.    Additional damages of which the Plaintiffs and members of the Class are presently unaware, but which will be proven at the time of trial.

54.    Plaintiffs and the members of the Class have been forced to retain attorneys to prosecute this action against Defendants, which will result in a benefit to the Class and the general public.  Plaintiffs and the members of the Class are entitled to recover attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

55.    Defendants are strictly liable to Plaintiffs and the Class for the damages caused by the defects and inadequacies in the design and manufacturer of UPONOR PEX.

## COUNT II
### STRICT PRODUCT LIABILITY FOR MISREPRESENTATION

**(Plaintiffs on behalf of themselves and all others similarly situated Against All Defendants)**

56.     Plaintiffs repeat and re-allege all prior and subsequent paragraphs and incorporate them as if repeated in full herein.

57.     Defendants sold UPONOR PEX for resale, use or consumption.

58.     Defendants misrepresented facts concerning the character or quality of the UPONOR PEX that would be material to potential purchasers or users of the product.

59.     Defendants represented that its PEX tubing was the highest quality PEX tubing available, and that its cross chemical bonding process gave it "superior characteristics."

60.     Defendants represented that UPONOR PEX has "superior resistance to stress-crack corrosion" and will suffer "no micro-cracking during expansion."

61.     When Defendants discontinued their manufacture, distribution and sale of red and blue UPONOR PEX because of the defects with the product, they provided misrepresentations that the product was being "suspended," not "discontinued," and instead concealed that it discontinued the product due to the defects and premature failures and damages.

62.     Defendants' misrepresentations were made to purchasers, potential purchasers and/or end users as members of the public at large.

63.     As end users, Plaintiffs and the members of the Class reasonably relied on the misrepresentations and/or the developer/builders responsible for building their homes and other structures reasonably relied on Defendants' misrepresentations.

64.      Plaintiffs and the members of the Class were persons and entities who would reasonably be expected to use, consume and/or be affected by UPONOR PEX.

65.     Plaintiffs and the members of the Class suffered damages caused by their reasonable reliance on the misrepresentations and/or their respective developer/builders reliance

on Defendants' misrepresentations.

### COUNT III
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
**(Plaintiffs on behalf of themselves and all others similarly situated Against All Defendants)**

58.     Plaintiffs repeat and re-allege all prior and subsequent paragraphs and incorporate them as if repeated in full herein.

59.     At all relevant times herein, Defendants manufactured and/or supplied the UPONOR PEX, and prior to the time the UPONOR PEX was put into the homes and other structures owned by Plaintiffs and the members of the Class, Defendants impliedly warranted that UPONOR PEX was of merchantable quality and fit for the ordinary use for which it was intended.

60.     The UPONOR PEX was unfit for its intended use and was not of merchantable quality because of the defects in the UPONOR PEX alleged herein.

61.     Defendants breached the implied warranty of merchantability, as the UPONOR PEX was not of a merchantable quality due to the defects alleged herein. As a direct and proximate result of Defendants' breach of said implied warranties, Plaintiffs and the members of the Class have suffered, and will continue to suffer, damages as alleged herein in an amount to be determined at trial.

### COUNT IV
### BREACH OF IMPLIED WARRANTY OF FITNESS
### FOR A PARTICULAR PURPOSE
**(Plaintiffs on behalf of themselves and all others similarly situated Against All Defendants)**

62.     Plaintiffs repeat and re-allege all prior and subsequent paragraphs and incorporate them as if repeated in full herein.

63.     At the time the UPONOR PEX was put into the homes and other structures owned by Plaintiffs and the members of the Class, Defendants had reason to know of the particular purpose for the UPONOR PEX. Defendants impliedly warranted that the UPONOR PEX was fit

for the particular purpose in the homes and other structures owned by Plaintiffs and the members of the Class.

64.    The implied warranties were intended to inure to the benefit of the end users, i.e., Plaintiffs and the members of the Class.

65.    Defendants breached the implied warranty because the UPONOR PEX was not fit for the particular purpose due to the defects alleged herein.

66.    As a direct and proximate result of Defendants' breach of said the implied warranties, Plaintiffs and the members of the Class have suffered, and will continue to suffer, damages as alleged herein in an amount to be determined at trial.

**COUNT V**
**NEGLIGENCE**
**(Plaintiffs on behalf of themselves and all others similarly situated Against All Defendants)**

67.     Plaintiffs repeat and re-allege all prior and subsequent paragraphs and incorporate them as if repeated in full herein.

68.    Defendants owed Plaintiffs and the members of the Class a duty to exercise reasonable and ordinary care in the testing, design, manufacture, distribution, advertising/marketing, and/or sale of the UPONOR PEX.

69.    Defendants negligently, carelessly, tortuously, and/or wrongfully failed to use reasonable care in the testing, design, manufacture, distribution, advertising/marketing, and/or sale of the UPONOR PEX in the homes and other structures owned by Plaintiffs and the members of the Class.

70.    Defendants knew or should have known that owners of homes and other structures with UPONOR PEX, including Plaintiffs and the members of the Class, would be substantially damaged thereby, as alleged herein.

71.    The use of UPONOR PEX has resulted in or will result in foreseeable damage as alleged herein.

72.    Defendants were under a duty to exercise ordinary care to avoid reasonably foreseeable injury to users and purchasers of homes and other structures, and knew or should have foreseen with reasonable certainty that purchasers and/or end users would suffer the damages set forth herein if Defendants failed to perform their duty to cause the UPONOR PEX to be tested, designed, manufactured, distributed, advertised/marketed, and/or sold in a proper workmanlike manner and fashion.

73.    Defendants failed and neglected to properly test, design, manufacture, distribute, advertise/market, and/or sell UPONOR PEX in that each Defendant so negligently, carelessly and in an unworkmanlike manner performed the aforesaid work such that the UPONOR PEX was tested, designed, manufactures, distributed, advertised/marketed, and/or sold improperly, negligently, carelessly and/or in an unworkmanlike manner.

74.    Plaintiffs and the members of the Class are lay people and lack the knowledge and understanding to inspect their homes or other structures for UPONOR PEX and understand whether the lines and components of the plumbing systems have any defects.  Plaintiffs and the members of the Class lacked the ability to test the UPONOR PEX to know whether a defect existed.

75.    Defendants' negligence is a substantial factor in causing the damages as alleged herein.

76.    As a direct and proximate result of the conduct described herein,  Plaintiffs and the members of the Class have suffered damages, including but not limited to damages to other property, in an amount precisely unknown, but believed to be within the jurisdiction of this Court

as alleged in this Complaint and incorporated herein, and according to proof at trial.

77.     As a direct and proximate result of Defendants' negligence, carelessness and breaches of its duty of reasonable and ordinary care, Plaintiffs and the putative Class have been caused to suffer losses and damages, including the cost of repairing and replacing the UPONOR PEX, interruption of their businesses and home life, damage to their homes, businesses and personal property due to leakage, and other incidental expenses associated with the failure of UPONOR PEX, all of which damages were foreseeable by Defendants.

**COUNT VI**
**VIOLATIONS OF STANDARDS FOR RESIDENTIAL CONSTRUCTION**
**CALIFORNIA CIVIL CODE § 895, ET SEQ.**
**(Plaintiffs on behalf of themselves and all others similarly situated Against All Defendants)**

78.     Plaintiffs repeat and re-allege all prior and subsequent paragraphs and incorporate them as if repeated in full herein.

79.     Plaintiffs are informed and believe and thereon allege that Defendants are, and at all times relevant were, individual product manufacturers involved in residential construction, design, specification, surveying, planning, supervision, and/or testing for original construction intended to be sold as an individual dwelling unit.

80.     Plaintiffs are informed and believe and thereon allege that Defendants were involved in the construction, design, specification, surveying, planning, supervision, and/or testing related to the homes owned by Plaintiffs and members of the Class, which were intended to be sold as individual dwelling units.

81.     California Civil Code § 896 sets forth the following standards applicable to the construction, design, specification, surveying, planning, supervision, testing, and / or observation of construction of the Plaintiffs' Home and the homes owned by members of the Class:

(a)(14)   The lines and components of the plumbing system, sewer system, and

utility systems shall not leak.

(a)(15)   Plumbing lines, sewer lines, and utility lines shall not corrode so as to impede the useful life of the systems.

82.     The lines and components of the plumbing systems in the Plaintiffs' Home and the homes of the members of the Class are leaking and / or corroding, as alleged herein, in violation of Civil Code §§ 896(a)(14) and (15).

83.     As a direct and proximate result of the Defendants' violations of the standards for residential construction set forth in Civil Code § 896, Plaintiffs and the members of the Class have suffered damages, including but not limited to damages to other property, in an amount precisely unknown, but believed to be within the jurisdiction of this Court as alleged in this Complaint and incorporated herein, and according to proof at trial.

84.     Pursuant to Civil Code § 944, Plaintiffs and the members of the Class are entitled to damages for the reasonable value or repairing any violation of the standards set forth in Civil Code § 895, et seq., the reasonable cost of repairing any damages caused by the repair efforts, the reasonable cost of repairing and rectifying any damages resulting from the failure of their homes to meet the standards, the reasonable cost of removing and replacing any improper repair by Defendants, reasonable relocation and storage expenses, lost business income, reasonable investigative costs for each established violation, and all other costs or fees recoverable by statute.

**COUNT VII**
**VIOLATIONS OF THE UNFAIR BUSINESS PRACTICES ACT**
**(Plaintiffs on behalf of themselves and all others similarly situated Against All Defendants)**

85.     Plaintiffs repeat and re-allege all prior and subsequent paragraphs and incorporate them as if repeated in full herein.

86.     This cause of action is brought on behalf of the Plaintiffs, members of the Class,

and members of the general public pursuant to California Business and Professions Code, §17200 et seq, which provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with §17500) of Part 3 of Division 7 of the Business and Professions Code."

87.     Upon information and belief, Plaintiffs allege that Defendants, and each of them, committed the unfair, deceptive and fraudulent practices alleged in this Complaint.

88.     Upon information and belief, Plaintiffs allege that Defendants committed unfair, fraudulent and deceptive business acts or practices by making written and oral representations (and material omissions) that have a capacity, tendency or likelihood to deceive or confuse members of the general public regarding the quality of the UPONOR PEX.

89.     Upon information and belief, Plaintiffs allege that Defendants committed unfair, fraudulent and deceptive business acts or practices by designing, manufacturing, advertising/marketing, distributing, and/or selling UPONOR PEX as alleged in this Complaint.

90.     Defendants committed illegal business acts or practices by violating the laws of the State of California, including but not limited to California Civil Code § 895, et seq.

91.     The utility of Defendants' conduct is far outweighed by the harm to the Plaintiffs and members of the Class.

92.     The Defendants' unlawful, unfair and fraudulent act and practices as alleged herein, present a threat to members of the public in that Defendants are systematically falsely advertising the quality of the UPONOR PEX and their alleged commitment to customer service and satisfaction.

93.     Pursuant to California Business and Professions Code §§ 17203 and 17535, the

Plaintiffs on behalf of themselves, the members of the Class, and members of the general public seek an order of this court:

> (1)    Enjoining the Defendants from continuing to engage, use, or employ any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with § 17500) of Part 3 of Division 7 of the Business and Professions Code; and

> (2)    Awarding restitution of all monies that may have been acquired by Defendants as a result of such unlawful, fraudulent and / or unfair act or practices.

94.    The Plaintiffs, members of the Class, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order as requested herein is not granted. Defendants' unlawful, unfair and fraudulent acts and practices, as described herein, present a serious threat to the Plaintiffs, the members of the Class, and members of the general public.

95.    As a result of Defendants' violation of the California Unfair Practices Act, the Plaintiffs and members of the Class are entitled to restitution, out of pocket expenses and economic harm suffered.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request, on behalf of themselves and members of the Class Members, that this Court:

A.    Determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, and/or under California law, and issue an order certifying the Class as defined above and designating Plaintiffs' counsel as counsel for the Class;

B.      Award all actual, compensatory, general, special, incidental, statutory, treble or other multiple, punitive and consequential damages to which Plaintiffs and the members of the Class are entitled;

C.      Award the cost to remove the DEFECTIVE PEX TUBING, and replace with a new non-defective plumbing system;

D.      Award costs to investigate the claims and costs of suit herein, including reasonable fees of consultants, accountants and experts, and other disbursements and expenses;

E.      Award loss of use and relocation expenses due to repairs;

F.      Award damages recoverable pursuant to California Civil Code § 944, including but not limited to, the reasonable value or repairing any violation of the standards set forth in Civil Code § 895, et seq., the reasonable cost of repairing any damages caused by the repair efforts, the reasonable cost of repairing and rectifying any damages resulting from the failure of the UPONOR PEX to meet the standards, the reasonable cost of removing and replacing any improper repair, reasonable relocation and storage expenses, lost business income, reasonable investigative costs for each established violation, and all other costs or fees recoverable by contract or statute;

G.      Award any and all relief available under California Business and Professions Code § 17200 et seq., including but not limited to restitution and disgorgement of monies received through Defendants' unlawful, unfair, or fraudulent business practices;

H.      Award attorneys' fees and costs of suit pursuant to Code of Civil Procedure section 1021.5;

I.      Award pre-judgment and post-judgment interest allowable by law;

J.      Grant appropriate injunctive and/or declaratory relief as the Court may deem reasonable; and

K.      Award reasonable attorneys' fees and costs; and grant such further and other relief that this Court deems appropriate. This relief may include, without limitation, any remediation, inspection, notice, and/or other necessary steps to be undertaken with respect to putative class members with UPONOR PEX on which the defect has not yet manifested.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the putative Class Members, demand a trial by jury on all issues so triable.

DATED: July 16, 2021          BURG | SIMPSON | ELDREDGE | HERSH | JARDINE PC

By:      */s/ Penny J. Manship*_____
Penny J. Manship, Esq.
8310 S. Valley Hwy, Suite 270
Englewood, CO  80210
Telephone: (303) 792-5595
Email: pmanship@burgsimpson.com


HARTMANN & KANANEN
Ronald A. Hartmann, Esq.
5743 Corsa Avenue, Suite 119
Westlake Village, CA  91362
Telephone: (818) 710-0151
Email: constructiondefects@gmail.com

Attorneys for Plaintiffs and Class Representatives, on behalf of themselves and all others similarly situated