UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOYT HAYNES, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>UPONOR, INC., et al.,<br><br>  Defendants. | Case No. 21-cv-05480-PJH<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL AND DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 33 |

Defendants' motion to compel or dismiss came on for hearing before this court on February 3, 2022. Plaintiffs appeared through their counsel, Penny Manship and Ron Hartman. Defendants appeared through their counsel, Jeffrey Goldman and Howard Lieber. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS in part and DENIES in part defendants' motion, for the following reasons.

**BACKGROUND**

Hoyt Haynes and Felicia M. Haynes ("plaintiffs") bring a class action lawsuit against Uponor Inc. and Uponor North America Inc. ("defendants") that manufacture blue and red colored cross-linked polyethylene tubing ("PEX"). Dkt. 31 ("SAC") at ¶ 1.

Plaintiffs own a home in Brentwood, California that was originally constructed with PEX incorporated in its potable water plumbing system. Id. at ¶ 3. Plaintiffs purchased their home from Seecon Built Homes, Inc. ("Seecon") in September 2016. Id. at ¶¶ 2, 7. As part of their purchase, plaintiffs and Seecon entered into a "Purchase Agreement" that included provisions regarding manufactured products. Dkt. 34-2 at 3. Sections 19 and

20 of the Purchase Agreement contain the following language about manufactured products and warranties:

> 19. **MANUFACTURED PRODUCT INFORMATION**: Seller intends to provide Buyer with maintenance procedures, maintenance schedules, maintenance recommendations, and limited warranty information ("**Manufactured Product Information**") for manufactured products, including appliances or consumer products (collectively "**Manufactured Products**") applicable to the Property.  For purposes of this Offer, a "manufactured product" means a product that is completely manufactured off site, including an appliance, air conditioning unit, furnace, water heater, or other product that is considered a "consumer products" as defined by the Federal Trade Commission for the purposes of the Magnuson Moss Act (15 U.S.C. 2301 et seq.).
>
> 20. **SELLER NOT RESPONSIBLE FOR MANUFACTURED PRODUCTS**: BUYER ACKNOWLEDGES AND AGREES THAT SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO MANUFACTURED PRODUCTS, APPLIANCES, OR CONSUMER PRODUCTS INSTALLED IN OR AROUND THE PROPERTY.  BUYER (ON BEHALF OF ITSELF AND ITS SUCCESSORS IN INTEREST) AGREES TO LOOK SOLELY TO THE MANUFACTURER AND NOT TO SELLER WITH RESPECT TO WARRANTIES ON ALL SUCH MANUFACTURED PRODUCTS, APPPLIANCES, AND CONSUMER PRODUCTS. ALTHOUGH THE MANUFACTURER OF SUCH MANUFACTURED PRODUCTS, APPLIANCES, AND CONSUMER PRODUCTS MAY PROVIDE A WARRANTY, SELLER HAS NO OBLIGATION OR RESPONSIBILITY FOR THE PERFORMANCE OF SUCH PRODUCTS AND APPLIANCES AND SELLER DOES NOT WARARANT ANY OF THESE ITEMS FOR ANY USE, FITNESS FOR USE, WORKMANSHIP

QUALITY OR OTHER PURPOSE.  IF A MANUFACTURER'S WARRANTY HAS BEEN ISSUED TO SELLER, SELLER HEREBY ASSIGNS TO BUYER, TO BE EFFECTIVE UPON CLOSING, WITHOUT RECOURSE TO SELLER, ALL RIGHTS UNDER SAID MANUFACTURER'S WARRANTIES, AS ARE ASSIGNABLE, ON APPLIANCES AND ANY OTHER CONSUMER PRODUCTS INCLUDED IN THE PROPERTY.

Dkt. 34-2 at 8.

Defendants extend a limited warranty ("PEX warranty") for the PEX products in dispute, which is available for review on defendants' public website.  Dkt. 33-1 at 2, ¶ 6. The warranty states that defendants warrant to the "owner of the applicable real property that the [PEX] products [] shall be free from defects in materials and workmanship . . . ." Dkt. 33-1 at 6.  The PEX warranty also mandates arbitration on unresolved claims and prohibits all class actions:

> **Warranty Claim Dispute Process:**
>
> In the event claimant and Uponor are unable to resolve a claim through informal means, the parties shall submit the dispute to the American Arbitration Association or its successor (the "Association") for arbitration, and any arbitration proceedings shall be conducted before a single arbitrator in the Minneapolis, Minnesota metropolitan area. NOTWITHSTANDING THE FOREGOING, NEITHER THE CLAIMANT NOR UPONOR, INC. SHALL BE ENTITLED TO ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS, AND NEITHER THE CLAIMANT NOR UPONOR SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS WITH ANY OTHER PARTIES IN ARBITRATION OR IN LITIGATION BY CLASS ACTION OR OTHERWISE.

Dkt. 33-1 at 6.

Plaintiffs allege that in October 2019 they discovered a water leak from the PEX in their master bedroom ceiling area, which caused significant damage to the walls and

3

master bathroom.  SAC at ¶ 8.  Rather than seeking a resolution under the PEX warranty, plaintiffs filed this suit on July 16, 2021.  Dkt. 1.  Plaintiffs' operative complaint asserts four causes of action: (1) strict product liability, (2) negligence, (3) violations of the Standards for Residential Construction, Cal. Civ. Code § 895, and (4) violations of the Unfair Business Practices Act.  Dkt. 31.  On November 29, 2021, defendants moved to compel arbitration, arguing plaintiffs are bound by the arbitration provision and class action prohibition in the PEX warranty.  Dkt. 33.  In the alternative, defendants moved to dismiss.  Id.

## DISCUSSION

Any party bound to an arbitration agreement that falls within the scope of the Federal Arbitration Act, Title 9 U.S.C. §§ 1, et. seq., may bring a motion to compel arbitration and stay the proceeding pending resolution of the arbitration.  9 U.S.C. §§ 3–4.  The party seeking to compel arbitration "must prove the existence of a valid agreement by a preponderance of the evidence."  Wilson v. Huuuge, Inc., 944 F.3d 1212, 1219 (9th Cir. 2019).  A court reviewing a motion to compel arbitration must consider two issues: (1) whether the parties agreed to arbitrate, and (2) whether the agreement covers their present dispute.  See Chiron Corporation v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

### 1. Agreement to Arbitrate

In "determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts."  Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014) (internal quotation marks omitted).  Under California law, "[a]n essential element of any contract is the consent of the parties."  Donovan v. RRL Corp., 26 Cal. 4th 261, 270 (2001).  "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement."  Norcia v. Samsung Telecommunications Am., LLC, 845 F.3d 1279, 1284 (9th Cir. 2017) (internal quotation marks omitted).  In Norcia, for example, the Ninth Circuit found that an arbitration provision in a brochure contained in a

cellphone box was nonbinding.  Id. at 1286.  The court reasoned that plaintiff did not expressly assent to the agreement nor did the plaintiff "sign the brochure or otherwise act in a manner that would show his intent to use his silence, or failure to opt out, as a means of accepting the arbitration agreement."  Id. at 1285 (internal quotation marks omitted).

Unlike Norcia, assent is not an issue here.  It is undisputed that plaintiffs signed the Purchase Agreement.  In that agreement, Seecon expressly assigned any manufacturer warranty associated with the Brentwood property to plaintiffs.  Specifically, section 20 states that "IF A MANUFACTURER'S WARRANTY HAS BEEN ISSUED TO SELLER, SELLER . . . ASSIGNS TO BUYER . . . ALL RIGHTS UNDER SAID MANUFACTURER'S WARRANTIES, AS ARE ASSIGNABLE, ON APPLIANCES AND ANY OTHER CONSUMER PRODUCTS INCLUDED IN THE PROPERTY."  Dkt. 34-2 at 8.  Through the Purchase Agreement, plaintiffs also agreed to "LOOK SOLELY TO THE MANUFACTURER AND NOT TO SELLER WITH RESPECT TO WARRANTIES ON ALL SUCH MANUFACTURED PRODUCTS, APPPLIANCES, AND CONSUMER PRODUCTS."  Id.  Seecon utilized PEX pipes when building the Brentwood property, and the PEX warranty covers those pipes.  As such, Seecon was a party to the PEX warranty and assigned the PEX warranty, including the arbitration and class provisions, to plaintiffs via the Purchase Agreement.[1]

The court rejects plaintiffs' argument that the Purchase Agreement only applies to "consumer products" as defined by the Moss Act.  Section 19 defines a "manufactured product" as "a product that is completely manufactured off site" or other product considered within "consumer products" as defined by the Moss Act.  The former definition applies here.  The PEX pipes were manufactured off-site, and thus fall within the agreement's definition of "manufactured product."

Moreover, plaintiffs judicially admitted to being subject to the PEX warranty.

---

[1] The court recognizes that defendants make a strong argument that plaintiffs are bound by the PEX warranty as third-party beneficiaries but resolves defendants' motion on other bases.

"Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." Ohkubo v. Antara Biosciences, Inc., 364 F. App'x 340, 341 (9th Cir. 2010). In their original complaint, plaintiffs asserted claims for breach of implied warranty against defendants, and such claims require a privity of contract. See, e.g., Burr v. Sherwin Williams Co., 42 Cal.2d 682, 695 (1954) ("The general rule is that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale."); Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008) (noting a "plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant"). Plaintiffs failed to provide an explanation for removing their implied warranty claims in subsequent complaints, and therefore failed to remedy their judicial admissions. See Sicor Ltd. v. Cetus Corp., 51 F.3d 848, 859–60 (9th Cir.1995) (stating where the "party making an ostensible judicial admission explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation due weight").

### 2.     Scope of Arbitration Agreement

"Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Cape Flattery Ltd. v. Titan Mar., LLC, 647 F.3d 914, 922–23 (9th Cir. 2011) (internal quotation marks and alterations omitted). "Courts should thus construe ambiguities concerning the scope of arbitrability in favor of arbitration." Id. at 923 (internal quotation marks omitted).

All claims raised by plaintiffs fall within the arbitration provision in the PEX warranty because plaintiffs' claims concern the quality of the PEX pipes and damages that resulted from those pipes. According to the PEX warranty, in the event a homeowner and defendants "are unable to resolve a claim through informal means, the parties shall submit the dispute" to arbitration. Dkt. 33-1 at 6. Plaintiffs' claims were not resolved through informal means. Thus, having found that plaintiffs were assigned the

PEX warranty, the court further finds that plaintiffs' claims fall within the scope of the arbitration provision in the PEX warranty.

A "court may either stay the action or dismiss [a case] outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." Johnmohammadi v. Bloomingdale's, Inc., 755 F.3d 1072, 1074 (9th Cir. 2014). In this instance, the court STAYS proceedings for the duration of arbitration proceedings.

## CONCLUSION

The court GRANTS defendants' motion to compel arbitration and STAYS this action pending arbitration proceedings. In light of this ruling, the court need not consider defendants' alternative motion to dismiss or strike, or the parties' corresponding evidentiary objections or requests for judicial notice. Accordingly, the court DENIES those motions without prejudice as MOOT.

**IT IS SO ORDERED.**

Dated: February 23, 2022

*/s/ Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge